Curtis L. MARSH, Appellant,

v.

Sharon MARSH, Appellee.

No. 08–06–00165–CV.

Court of Appeals of Texas,
El Paso.

Aug. 16, 2007.

Curtis Lewis Marsh, Dallas, for appellant.

Jonathan G. Polak, Sommer Barnard, PC, Indianapolis, IN, for appellee.

Before CHEW, C.J., McCLURE, and CARR, JJ.

## OPINION

ANN CRAWFORD McCLURE, Justice.

Curtis L. Marsh appeals from an order granting Sharon Marsh's special appearance and dismissing the cause of action with prejudice to re-filing in Texas. Finding no error, we affirm.

### FACTUAL SUMMARY

Curtis Marsh, a Texas attorney, sued his stepmother, Sharon Marsh, for tortious interference with business and contractual relationships, tortious interference with prospective business relationships, slander and defamation, invasion of privacy, and intentional infliction of emotional distress. All of the claims arise from Curtis' efforts to purchase an Illinois title company owned by his father and Sharon's alleged interference with the purchase.

Curtis was raised in Tuscola, Illinois but he has practiced law in Dallas, Texas since 1985.[1] His father, Rick Marsh, owns a Tuscola title business, Douglas County Abstract Company, Inc. The title company has been in the Marsh family since the early 1900's. Sharon has worked for the company since the 1970's. The record does not reflect when Sharon married Rick Marsh.

Sometime in 2003, Rick telephoned Curtis and expressed a desire to retire in about a year. Rick wanted the title company to stay in the family and he offered to sell the business to Curtis for $500,000. Curtis accepted, and he had several other

---

1. The facts pertaining to the events which led to Curtis filing suit against Sharon are taken from Curtis' pleadings and the affidavits of Curtis and his wife, Jamie Marsh.

conversations with his father about the purchase and Curtis' planned relocation to Tuscola. Curtis intended to establish a law practice in Tuscola and he was considering "taking over" the bench for a district judge who was retiring. During the summer of 2004, Curtis and his family began making preparations to relocate and they planned to look for a house during a Thanksgiving trip to Tuscola.

On September 21, 2004, Sharon telephoned Curtis' wife because Sharon had just learned that Curtis had agreed to take over the title company and that they were planning on looking at houses at Thanksgiving. Sharon was livid and she asked Jamie not to tell Curtis or Rick about their conversation. Sharon attempted to discourage Jamie from moving to Tuscola. She also inquired about the purchase price of the title company and their financial situation, including how much Curtis earned in his law practice in Dallas. Sharon told Jamie that Rick had made the decision to sell the business without her knowledge or consent and she would not sacrifice her standard of living by allowing the business to be sold to Curtis. Finally, Sharon told Jamie that Curtis could not make a living in Tuscola and they were not welcome there. Based on this conversation, Jamie told Curtis that she would not move to Illinois.

Rick called Curtis later the same day and told him that Sharon had learned of his plans to sell the business and because she objected, he could not sell it to Curtis for $500,000. Rick informed Curtis that Sharon owned one-half of the business and he would want significantly more money if and when he decided to sell it. According

to Curtis, his father has not spoken to him since that day.

Sharon filed a special appearance supported by her affidavit. Curtis responded with his own affidavit and Jamie's affidavit. The parties entered into a Rule 11 agreement that, for purposes of the special appearance only, the defendant would assume that the substance of the conversation between Jamie Marsh and Sharon Marsh which took place on September 21, 2005 [2] was true as alleged in plaintiff's first amended petition and in Jamie's affidavit.[3] The docket sheet reflects that on March 9, 2006, the trial court conducted a hearing on the special appearance during which Curtis appeared in person and Sharon's attorney appeared by telephone. The appellate record does not include a transcription of the hearing. Presumably, the hearing was non-evidentiary and the trial court considered only the evidence filed with the clerk. *See Michiana Easy Livin' Country v. Holten,* 168 S.W.3d 777, 782–83 (Tex.2005). Our presumption is supported by the trial court's order on the special appearance which indicates that the court considered Sharon's special appearance, brief and affidavit offered in support of her special appearance, the affidavits of Jamie and Curtis Marsh, Curtis' response to the special appearance, the pleadings, and the arguments and authorities of counsel. The court granted the special appearance and dismissed the suit on April 11, 2006. Curtis filed a timely notice of appeal.

## SPECIAL APPEARANCE

In his sole issue for review, Curtis challenges the order granting the special appearance and dismissing his suit.

---

**2.** Although the Rule 11 agreement recited the date as September 21, 2005, the pleadings and Jamie's affidavit state the conversation took place on September 21, 2004.

**3.** In her affidavit, Sharon disputed Jamie's description of the conversation.

## Standard of Review

The plaintiff bears the initial burden of pleading sufficient allegations to bring a non-resident defendant within the personal jurisdiction of a Texas court. *BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 793 (Tex.2002). The nonresident defendant then assumes the burden of negating all bases of jurisdiction in those allegations. *Id.*

Whether a trial court has personal jurisdiction over a defendant is a question of law, which we review *de novo.* *Id.* at 794.[4] However, the trial court frequently must resolve questions of fact before deciding the question of jurisdiction. *Id.* If a trial court enters an order denying a special appearance, and the trial court issues findings of fact and conclusions of law, the appellant may challenge the fact findings on legal and factual sufficiency grounds. *Id.* When, as here, the trial court does not issue findings of facts and conclusions of law with its special appearance ruling, all fact findings necessary to support the judgment and supported by the evidence are implied. *Id.* at 795.

## Waiver of Special Appearance

We first consider Curtis' argument that Sharon waived her special appearance by (1) failing to verify her special appearance as required by Rule 120a, and (2) by setting her special exceptions for hearing on December 12, 2005 prior to a hearing on the special appearance. Sharon filed an unsworn special appearance on October 14, 2005. On October 31, 2005, she filed her affidavit which, among other things, verified the special appearance previously filed by her attorney. Rule 120a(1) of the Rules of Civil Procedure requires that a special appearance be made by sworn motion but it also provides that it may be amended to cure any defect. TEX. R.CIV.P. 120a(1). As permitted by Rule 120a(1), Sharon corrected the defect in the original special appearance by verifying it. This portion of Curtis' complaint is without merit.

With respect to the second waiver argument, Sharon asserts that Curtis has misrepresented the facts because he is aware that the special appearance, not special exceptions, were set for a hearing on December 12, 2005. Sharon's attorney stated in a letter to Curtis that special exceptions were set for a hearing on December 12, 2005. However, the trial court's docket sheet reflects that Sharon's special appearance, not her special exceptions, was set for a hearing on December 12, 2005 and it was re-set for a later date. Other than the apparently erroneous letter written by Sharon's attorney, there is no evidence in the record supporting Curtis' assertion of waiver. Furthermore, Curtis has raised the issue in a single sentence and he has not provided any citation to authority. Rule 38.1(h) of the Texas Rules of Appellate Procedure provides that an appellant's brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX.R.APP.P. 38.1(h). Failure to cite authority or provide substantive analysis waives an issue on appeal. *See Federal Sign v. Texas Southern University,* 951 S.W.2d 401, 410 (Tex.1997); *Leyva v. Leyva,* 960 S.W.2d 732, 734 (Tex.App.-El Paso 1997, no writ).

4. *BMC Software* impliedly overruled our decision in *Tuscano v. Osterberg,* 82 S.W.3d 457 (Tex.App.-El Paso 2002, no pet.). In *Tuscano,* we overruled *In re Estate of Judd,* 8 S.W.3d 436 (Tex.App.-El Paso 1999, no pet.) and held that the standard of review of a trial court's ruling on a special appearance is legal sufficiency. The Supreme Court cited *In re Estate of Judd* with approval in *BMC Software,* 83 S.W.3d at 794.

Accordingly, we find that Curtis has waived the issue.

### Jurisdiction Over Nonresident Defendants

■ Texas courts may assert *in personam* jurisdiction over a nonresident if (1) the Texas long-arm statute [5] authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with federal and state constitutional due-process guarantees. *Moki Mac River Expeditions v. Drugg,* 221 S.W.3d 569, 574 (Tex.2007); *Schlobohm v. Schapiro,* 784 S.W.2d 355, 356 (Tex.1990). The long-arm statute permits Texas courts to exercise jurisdiction over nonresident defendants that do business in Texas, and the statute contains a non-exclusive list of activities that constitute "doing business." TEX.CIV. PRAC. & REM.CODE ANN. § 17.042 (Vernon 1997). Pertinent to this case, a nonresident does business in Texas if the nonresident commits a tort in whole or in part in the state. TEX.CIV.PRAC. & REM.CODE ANN. § 17.042(2). Curtis' pleadings assert that Sharon committed torts in Texas.

■ Section 17.042's broad language extends Texas courts' personal jurisdiction "as far as the federal constitutional requirements of due process will permit." *BMC Software,* 83 S.W.3d at 795, *quoting U–Anchor Adver., Inc. v. Burt,* 553 S.W.2d 760, 762 (Tex.1977). Consequently, we consider whether it is consistent with federal constitutional requirements of due process for Texas courts to assert *in personam* jurisdiction over Sharon. *See Guardian Royal Exchange Assurance, Ltd. v. English China Clays,* 815 S.W.2d 223, 226 (Tex.1991). We rely on both federal and Texas decisions in determining whether a nonresident defendant has met its burden to negate all bases of jurisdiction. *BMC Software,* 83 S.W.3d at 795.

■ The United States Supreme Court divides the due process requirements into two parts: (1) whether the nonresident defendant has purposely established minimum contacts with the forum state, and if so, (2) whether the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *BMC Software,* 83 S.W.3d at 795, *citing International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Minimum contacts are sufficient for personal jurisdiction when the nonresident defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). We consider several factors in making the purposeful availment determination. *Michiana Easy Livin' Country, Inc.,* 168 S.W.3d at 784–85. First, only the defendant's contacts with the forum are relevant, and we do not consider the unilateral activity of another party or a third person. *Id.* at 785. Second, the contacts relied upon must be purposeful rather than random, fortuitous, or attenuated. *Id.* Third, the defendant must seek some benefit, advantage, or profit by availing itself of the jurisdiction. *Id.*

■ Personal jurisdiction exists if the nonresident defendant's minimum contacts give rise to either specific jurisdiction or general jurisdiction. *BMC Software,* 83 S.W.3d at 795–96, *citing Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 413–14, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *Guardian Royal,* 815 S.W.2d at 226. For a court to exercise

---

**5.** TEX.CIV. PRAC. & REM.CODE ANN. §§ 17.041– .045 (Vernon 1997 and Vernon Supp.2006).

specific jurisdiction over a nonresident defendant, two requirements must be met: (1) the defendant's contacts with the forum must be purposeful, and (2) the cause of action must arise from or relate to those contacts. *American Type Culture Collection, Inc. v. Coleman,* 83 S.W.3d 801, 806 (Tex.2002). The minimum contacts analysis for specific jurisdiction focuses on the relationship among the defendant, the forum, and the litigation. *Helicopteros,* 466 U.S. at 414, 104 S.Ct. 1868; *Michiana Easy Livin' Country, Inc.,* 168 S.W.3d at 790. In contrast, general jurisdiction is present when a defendant's contacts in a forum are continuous and systematic so that the forum may exercise personal jurisdiction over the defendant even if the cause of action did not arise from or relate to activities conducted within the forum state. *BMC Software,* 83 S.W.3d at 796.

### Specific Jurisdiction

■ Curtis asserts that specific jurisdiction exists because Sharon deliberately committed acts which were purposefully directed to Texas and his claims arise from that conduct. He also argues that Sharon could reasonably anticipate having to defend herself in a Texas court as a result of her actions. The Supreme Court has expressly rejected the argument that jurisdiction exists solely because a defendant directed a tort at Texas. *Michiana,* 168 S.W.3d at 791–92. Instead, we must examine whether the defendant's contacts with the forum are purposeful and whether the cause of action arises from or relates to those contacts. *See American Type,* 83 S.W.3d at 806.

In contending that jurisdiction exists, Curtis argues that his father and the title company have done business in Texas. The contacts of Rick Marsh and the title company are irrelevant to the issue of specific jurisdiction. It is only the defen-

dant's contacts with the forum that count: purposeful availment ensures that a defendant will not be haled into a jurisdiction solely as a result of the unilateral activity of another party or a third person. *Michiana,* 168 S.W.3d at 785. Thus, we will consider only Sharon's contacts with Texas.

Sharon is not a Texas resident and she does not own any property in here. Other than attending the wedding of Curtis and Jamie in 1990 and visiting with them during the Christmas holidays on two occasions since 1999 or 2000, Sharon has not been to Texas. She did not discuss the title company or its potential sale during any of these visits. In the past, Sharon made social telephone calls to Curtis and his wife approximately three or four times each year and she corresponded by mail once or twice a year. Other than the single phone call detailed in Curtis' pleadings and Jamie's affidavit, Sharon has not had any discussions in Texas about the prospect of Curtis purchasing the title company and none of her alleged liability arises from or is related to an activity conducted within the forum. Therefore, the only issue in deciding the specific jurisdiction issue is whether by making this single telephone call Sharon purposefully availed herself of the privileges and benefits of conducting activities within Texas, thus invoking the benefits and protections of its laws. *See Michiana,* 168 S.W.3d at 784.

Curtis has directed our attention to only one case in which a single phone call made by the nonresident defendant to the forum state was found sufficient to establish specific jurisdiction. *See Brown v. Flowers Industries, Inc.,* 688 F.2d 328 (5th Cir. 1982). There, Jerry Kralis, who is an Indiana resident and the president of an Indiana corporation, telephoned the U.S. Attorney in Oxford, Mississippi and made

allegedly defamatory statements about a Mississippi resident and a Mississippi corporation, which caused them to lose the chance to obtain a $4 million loan from the Farmers Home Administration. The plaintiffs filed suit in Mississippi against Kralis, Kralis Brothers Foods, and Flowers Industries, Inc., a Delaware corporation with its principal place of business in Georgia, alleging that the defendants conspired to and did cause them economic and other injuries. The district court held that the single contact was insufficient under the due process clause to subject the defendants to *in personam* jurisdiction but the Fifth Circuit disagreed. The Fifth Circuit drew a distinction between a negligent tort and an intentional one, and found that Kralis could easily have foreseen that the injurious effect of the alleged intentional tort would fall in Mississippi. *Brown*, 688 F.2d at 333–34. The Supreme Court distinguished *Brown* in *Michiana* on the ground that the defendant's conduct was much more extensive and was aimed at getting extensive business in or from the forum state. *Id.* at 789–90. *Michiana* expressly disapproved of the *Brown* analysis because this kind of foreseeability is not a sufficient benchmark for exercising jurisdiction. *Michiana*, 168 S.W.3d at 788–89. The court went on to note that it had expressly rejected jurisdiction based solely upon the effects or consequences of an alleged conspiracy in the forum state. *Id.* at 789. It is the defendant's conduct and connection with the forum that are critical. *Id.* Given the Supreme Court's express rejection of the analysis employed in *Brown*, we will not apply it here.

In support of his assertion that specific jurisdiction exists, Curtis also cites *Schexnayder v. Daniels*, 187 S.W.3d 238 (Tex. App.-Texarkana 2006, pet. dism'd w.o.j.), *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), *Wright v. Sage Engineering, Inc.*, 137 S.W.3d 238 (Tex.App.-Houston [1st Dist.] 2004, pet. denied), *Moki Mac River Expeditions v. Drugg*, No. 05–03–00051–CV, 2004 WL 100389 (Tex.App.-Dallas Jan. 22, 2004), *reversed by* 221 S.W.3d 569 (Tex.2007), and *Boissiere v. Nova Capital, LLC*, 106 S.W.3d 897 (Tex.App.-Dallas 2003, no pet.). None of these cases holds that specific jurisdiction arose from a single telephone call. Further, the Texas Supreme Court reversed the Dallas Court of Appeals' decision in *Moki Mac* after Appellant filed his brief, and it disapproved of *Boissiere* in *Michiana*.

Despite Curtis' allegation that Sharon committed various torts, in part through the telephone call to Jamie, this single contact does not evidence the "purposeful availment" necessary for finding specific jurisdiction. Because we do not find purposeful availment or minimum contacts, it is unnecessary to address the second prong of the due process inquiry, that is, whether the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. The trial court did not err by impliedly concluding that Sharon negated specific jurisdiction.

*General Jurisdiction*

General jurisdiction exists when a defendant's contacts in a forum are continuous and systematic so that the forum may exercise personal jurisdiction over the defendant even if the cause of action did not arise from or relate to activities conducted within the forum state. *BMC Software*, 83 S.W.3d at 796. Under general jurisdiction standards, the cause of action need not arise from or relate to the activities conducted within the forum state by the nonresident defendant, but the minimum contacts analysis becomes more demanding; the contacts must be substantial. *See BMC Software*, 83 S.W.3d at 797.

Curtis contends that general jurisdiction exists in this case because, in addition to the evidence that she had traveled to Texas for family visits and been in contact with Curtis and his family, Sharon had in the previous three or four years sought legal advice from him regarding her contemplated purchase of a residence near Lake Barkley and Eddyville, Kentucky. Sharon sent Curtis a check in the amount of $1,000 or $1,500 for legal fees.

Sharon's social trips to Texas and her telephone calls to the Marsh family in Dallas are random and occasional rather than being continuous and systematic. The evidence in the record reflects that Sharon has visited the state only a few times in the fourteen year period before the commission of the alleged torts and she has called Curtis and his family only once or twice a year. She has also corresponded with the family on a once or twice yearly basis. These contacts do not constitute the type of continuous and systematic contacts necessary to subject a nonresident to the state's jurisdiction. The fact that Sharon telephoned Curtis in the previous three or four years to obtain legal advice related to the purchase of real property in Kentucky does not change the analysis. The record does not reflect that the contact was continuous or systematic. Further, contracting with a Texas resident is not by itself sufficient to subject a nonresident defendant to jurisdiction in Texas. *See Experimental Aircraft Association, Inc. v. Doctor,* 76 S.W.3d 496, 507–08 (Tex. App.-Houston [14th Dist.] 2002, no pet.); *Magnolia Gas Co. v. Knight Equip. & Mfg. Corp.,* 994 S.W.2d 684, 691 (Tex.App.-San Antonio 1998, no pet.). Given that we do not find purposeful availment, we need not address the second prong of the due process inquiry. After reviewing the record, we conclude that Sharon negated all bases of jurisdiction. We overrule the sole issue and affirm the trial court's order granting the special appearance and dismissing Curtis' suit.