

/

# IN THE
# TENTH COURT OF APPEALS

_____

### No. 10-11-00187-CV

_____

**DEIRDRE HALE,**

Appellant

 **v.**

**SHEILA RICHEY,**

Appellee

_____

**From the 278th District Court
Madison County, Texas
Trial Court No. 10-12565-278-10**

_____

## MEMORANDUM OPINION

_____

This is an accelerated interlocutory appeal of the trial court's denial of Deirdre

Hale's special appearance. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(7) (West

2008).

### BACKGROUND

George Baker Richardson, professionally known as George Richey, was a

"nationally renowned" country music songwriter and musician who wrote such songs

as "The Grand Tour" and "Picture of Me Without You."[1]  He was the father of three children, including Hale, whom he had adopted in 1963.  He was married to Tammy Wynette until her death in 1998.

In 2001, George married Sheila Richey, and they lived together until his death on July 31, 2010.  After George's death, Sheila Richey (hereafter "Richey") filed suit against Hale for defamation, public disclosure of private facts, and intentional infliction of emotional distress.  Richey alleged that after George's death, she

> began to receive information via the internet and written publications that were outrageously false, defamatory, and extremely distressing to her, causing her anguish, embarrassment, and humiliation, especially, given her grief over the loss of her husband approximately two months before. One such national publication, printed on October 13, 2010, directly quoted Defendant Deirdre Hale as its source.  In proffering these slanderous statements to the publication, Defendant knew or should have reasonably known that she created an unreasonable risk that such statements would be communicated to other parties.

Regarding the trial court's exercise of personal jurisdiction over Hale, a California resident, Richey's original petition stated that Hale committed the pleaded torts in whole, or in part, in Texas.

Hale filed an unsworn special appearance on January 20, 2011, alleging that Texas lacked personal jurisdiction over her.  On February 10, she then filed a "First Supplemental Special Appearance" with an attached affidavit that verified the facts set forth in the special appearance.  Hale argued in the special appearance that Richey alleged she committed a tort in the State of Texas, giving Texas long-arm jurisdiction over her, but that Richey did not state specifically the facts supporting this allegation.

---

[1] The facts in this paragraph and the next are drawn from Sheila Richey's first amended petition.

Hale also averred in her affidavit that she is not a Texas resident and resides in California; she does not maintain a place of business in Texas; she does not maintain a registered agent for service in Texas; she does not maintain an office, mailing address, telephone number, or bank account in Texas; and she has never committed a tort in Texas.

The hearing on Hale's special appearance was scheduled for February 18 at 10:00 a.m. At 9:45 a.m. on February 18, Richey filed her response to Hale's special appearance and her first amended petition, all in one document. Richey stated in her response that although Hale listed in her affidavit numerous facts regarding general jurisdiction, the only sentence addressing the court's specific jurisdiction (*i.e.*, that Hale had never committed a tort in Texas) was both legal argument and false. Richey asserted that in addition to making statements regarding her to a national publication that is "sold at almost every grocery store in Texas," Hale also made defamatory statements about her to at least one relative in Texas via telephone and text message and that she used facebook.com as a medium to defame Richey to multiple recipients whom she knew to be in Texas. Richey further stated, "Of great significance is the fact that these statements arose regarding a Wynette Trust that is located and administered in Texas, the administration of which was a target for her defamatory statements regarding Plaintiff." The first amended petition was identical to the original petition except for the following additional allegations:

> 11. Defendant Hale, a beneficiary of the Wynette Trust, also made defamatory statements regarding Plaintiff's involvement in the

Wynette Trust, through George Richardson. The Wynette Trust is located and administered in Madisonville, Texas.

12. Plaintiff has also learned that Defendant has used both facebook.com, telephone calls, and text messaging to defame Plaintiff to residents and family members in Texas.

At the end of the hearing at which the parties presented no evidence, the trial court stated, "I have already decided what I'm going to do. I'm going to overrule the motion, overruling the special appearance." Approximately one week after the special appearance hearing, Hale filed a first supplemental affidavit, specifically denying the factual allegations in Richey's original and first amended petitions. Then on April 15, 2011, the trial court signed an order stating as follows: "On February 18, 2011, the Court considered the Defendant's Special Appearance, and ORDERS: The Special Appearance is DENIED."

## APPLICABLE LAW

### A. Standard of Review

Whether a court has personal jurisdiction over a nonresident defendant is a question of law; thus, we review a trial court's determination of a special appearance *de novo*. *Spir Star AG v. Kimich*, 310 S.W.3d 868, 871 (Tex. 2010); *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 657 (Tex. 2010). When, as here, a trial court does not issue findings of fact or conclusions of law to support its special-appearance determination, we presume that all factual disputes were resolved in favor of the trial court's ruling. *Spir Star*, 310 S.W.3d at 871-72; *Kelly*, 301 S.W.3d at 657.

## B.  Personal Jurisdiction

A court may assert personal jurisdiction over a nonresident defendant only if the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution and the Texas long-arm statute are satisfied.  *CSR Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex. 1996) (orig. proceeding); *see* U.S. CONST. amend. XIV, § 1; TEX. CIV. PRAC. & REM. CODE ANN. § 17.042 (West 2008).  Under the long-arm statute, Texas courts can exercise personal jurisdiction over a nonresident defendant who "does business" in Texas.  TEX. CIV. PRAC. & REM. CODE ANN. § 17.042; *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002).  The statute lists three activities that constitute "doing business" in Texas:  (1) contracting with a Texas resident when either party is to perform the contract in whole or in part in Texas; (2) committing a tort in whole or in part in Texas; and (3) recruiting Texas residents for employment inside or outside of Texas.  TEX. CIV. PRAC. & REM. CODE ANN. § 17.042.  But the statute also provides that "other acts" by the nonresident may constitute "doing business" in Texas, *id.*, and the Texas Supreme Court has repeatedly interpreted this broad statutory language to reach "as far as the federal constitutional requirements for due process will allow."  *Spir Star*, 310 S.W.3d at 872.  Therefore, the requirements of the Texas long-arm statute are satisfied if the exercise of personal jurisdiction comports with federal due process limitations.  *Id.*

The U.S. Constitution permits a state to assert personal jurisdiction over a nonresident defendant when two conditions are met:  (1) the defendant has established minimum contacts with the forum state; and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice.  *BMC Software*, 83 S.W.3d at

795. Minimum contacts are sufficient for personal jurisdiction when the nonresident defendant "*purposefully avails* itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex. 2005) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958) (emphasis added)). There are three parts to a purposeful availment inquiry: (1) only the nonresident defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person; (2) the contacts relied on must be purposeful rather than random, fortuitous, or attenuated; and (3) the nonresident defendant must seek some benefit, advantage, or profit by availing itself of the jurisdiction. *Moki Mac Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007); *Michiana*, 168 S.W.3d at 784-85.

A nonresident defendant's minimum contacts may give rise to either specific jurisdiction or general jurisdiction. *Moki Mac*, 221 S.W.3d at 575. For a court to exercise specific jurisdiction over a nonresident defendant, two requirements must be met: (1) the nonresident defendant's contacts with the forum state must be purposeful; and (2) the cause of action must arise from or relate to those contacts. *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002). The minimum-contacts analysis for specific jurisdiction focuses on the relationship among the defendant, the forum, and the litigation. *Moki Mac*, 221 S.W.3d at 575-76. In contrast, general jurisdiction is present when a defendant's contacts in a forum are continuous and systematic so that the forum may exercise personal jurisdiction over the defendant even

if the cause of action did not arise from or relate to activities conducted within the forum state. *BMC Software*, 83 S.W.3d at 796.

## C.  Shifting Burdens

Our special-appearance jurisprudence dictates that the plaintiff and the defendant bear shifting burdens of proof in a challenge to personal jurisdiction. We have consistently held that the plaintiff bears the initial burden to plead sufficient allegations to bring the nonresident defendant within the reach of Texas's long-arm statute. *See* [*Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 337 (Tex. 2009)]; *Moki Mac*, 221 S.W.3d at 574; *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 807 (Tex. 2002); *BMC Software*, 83 S.W.3d at 793; *McKanna v. Edgar*, 388 S.W.2d 927, 930 (Tex. 1965). Once the plaintiff has pleaded sufficient jurisdictional allegations, the defendant filing a special appearance bears the burden to negate all bases of personal jurisdiction alleged by the plaintiff. *E.g.*, *Retamco Operating*, 278 S.W.3d at 337. Because the plaintiff defines the scope and nature of the lawsuit, the defendant's corresponding burden to negate jurisdiction is tied to the allegations in the plaintiff's pleading.

If the plaintiff fails to plead facts bringing the defendant within reach of the long-arm statute (i.e., for a tort claim, that the defendant committed tortious acts in Texas), the defendant need only prove that it does not live in Texas to negate jurisdiction. *See Siskind v. Villa Found. for Educ., Inc.*, 642 S.W.2d 434, 438 (Tex. 1982) ("[T]he only evidence offered to negate jurisdiction was [a defendant's] testimony that she and the other individuals were residents of Arizona. . . . In view of [the plaintiff's] failure to allege any act by these individuals in Texas, we believe that the [defendants] have sustained their burden."). When the pleading is wholly devoid of jurisdictional facts, the plaintiff should amend the pleading to include the necessary factual allegations, *see* TEX. R. CIV. P. 63, thereby allowing jurisdiction to be decided based on evidence rather than allegations, as it should be.

The defendant can negate jurisdiction on either a factual or legal basis. Factually, the defendant can present evidence that it has no contacts with Texas, effectively disproving the plaintiff's allegations. The plaintiff can then respond with its own evidence that affirms its allegations, and it risks dismissal of its lawsuit if it cannot present the trial court with evidence establishing personal jurisdiction. Legally, the defendant can show that even if the plaintiff's alleged facts are true, the evidence is

legally insufficient to establish jurisdiction; the defendant's contacts with Texas fall short of purposeful availment; for specific jurisdiction, that the claims do not arise from the contacts; or that traditional notions of fair play and substantial justice are offended by the exercise of jurisdiction.

*Kelly*, 301 S.W.3d at 658-59 (footnotes omitted).

## DISCUSSION

### A.   Richey's Burden to Plead Sufficient Allegations

We begin with Hale's fourth issue, in which she argues that Richey failed to allege sufficient facts that, if true, would permit the trial court to exercise personal jurisdiction over her, and Hale's fifth issue, in which she argues that Richey failed to timely and properly amend her operative pleading so as to meet her jurisdictional burden.

The plaintiff bears the initial burden to plead sufficient allegations to bring the nonresident defendant within the reach of Texas's long-arm statute. *Kelly*, 301 S.W.3d at 658. The plaintiff's petition as well as her response to the defendant's special appearance can be considered in determining whether the plaintiff satisfied her burden. *Wikert v. Year One, Inc.*, 320 S.W.3d 522, 524 (Tex. App.—Dallas, 2010, no pet.); *Touradji v. Beach Capital P'ship, L.P.*, 316 S.W.3d 15, 23 (Tex. App.—Houston [1st Dist.] 2010, no pet.); *see* TEX. R. CIV. P. 120a(3). Hale argues here, however, that Richey's first amended petition, filed only fifteen minutes before the scheduled special-appearance hearing and in the same document with her response, should not be considered in determining whether Richey alleged sufficient facts to permit the trial court to exercise personal jurisdiction over her because the filing violated Rules of Civil Procedure 46 and 63.

Rule 46 requires every petition and answer to be contained in one instrument of writing. *See* TEX. R. CIV. P. 46. But a complaint about the failure to comply with Rule 46 is forfeited on appeal by the failure to make the trial court aware of the complaint. *See* TEX. R. APP. P. 33.1(a)(1). Hale did not complain to the trial court about Richey's first amended petition not being contained in one instrument of writing, instead complaining of it for the first time on appeal. Thus, we conclude that Hale has failed to preserve this complaint for review. *See id.*

Hale also complains that the amended petition was untimely because it was not filed at least seven days before the special-appearance hearing as required by Rule 63, which states:

> Parties may amend their pleadings, respond to pleadings on file of other parties, file suggestions of death and make representative parties, and file such other pleas as they may desire by filing such pleas with the clerk at such time as not to operate as a surprise to the opposite party; provided, that any pleadings, responses or pleas offered for filing within seven days of the date of trial or thereafter, or after such time as may be ordered by the judge under Rule 166, shall be filed only after leave of the judge is obtained, which leave shall be granted by the judge unless there is a showing that such filing will operate as a surprise to the opposite party.

TEX. R. CIV. P. 63. Assuming without deciding that Rule 63 required Richey to file her amended petition at least seven days before the special-appearance hearing or to obtain leave from the trial judge to file the amended petition within seven days of the hearing, we conclude that Hale also forfeited this complaint about the untimeliness of Richey's amended petition.

At the beginning of the hearing, Hale's counsel commented on the timing of Richey's response to the special appearance but raised no complaint. She stated,

Hale v. Richey

"Judge, I did just get their response so I haven't read it, so I don't really know what it says.  But as far as our motion goes, our position is basically this."  Hale's counsel then proceeded to argue her position and concluded:  "And I guess maybe I will let them tell me the response."  The trial court then took time to read "the pleading" after which the following exchange occurred:

> THE COURT:  What do you claim was said that was slanderous?  It's not in the petition.
>
> [Richey's Counsel No. 1]:  I have also updated.  I don't know if Your Honor got a copy this morning.  It was an amended petition.  I can hand you this one.
> Your Honor, it's a few things, but most of it has to do, unfortunately, with the death of George Richey and how that was handled.  And, frankly, the worst thing that was said without quoting was that my client defrauded the estate through George Richey and very specifically did certain acts to Mr. Richey while he was alive.  Completely inaccurate, completely false and completely defamatory.
>
> [Richey's Counsel No. 2]:  To hasten his death and bring about ill health so he would die.
>
> [Richey's Counsel No. 1]:  We have amended to tighten up those facts.  My apology for the short response, but we got a valid motion from them on the 8th, just ten days ago, an affidavit attached.

At that time, Hale's counsel made no objection to the filing of the amended petition, asserted no claim of surprise, nor requested a continuance to properly respond to the amended petition.  *See* TEX. R. APP. P. 33.1(a)(1); *Gardner v. Best Western Int'l, Inc.*, 929 S.W.2d 474, 478 (Tex. App.—Texarkana 1996, writ denied) ("The trial court's action in considering an amended pleading may cure the failure to obtain leave, if there is no showing of surprise to the opposing party.").  Instead, Hale relied on the original affidavit attached to her "First Supplemental Special Appearance" filed before the

special-appearance hearing. Thus, Hale's complaint about the untimeliness of Richey's amended petition and response was not preserved for our review, and we will consider Richey's first amended petition in determining whether she alleged sufficient facts to permit the trial court to exercise personal jurisdiction over Hale. *See* TEX. R. APP. P. 33.1(a)(1); *Gardner*, 929 S.W.2d at 478. We overrule Hale's fifth issue.

Richey alleged in her first amended petition and response to Hale's special appearance that Hale made slanderous statements regarding her to a national publication that is "sold at almost every grocery store in Texas." Richey stated that the publication, printed on October 13, 2010, directly quoted Hale as its source. Richey alleged that in proffering these statements to the publication, Hale "knew or should have reasonably known that she created an unreasonable risk that such statements would be communicated to other parties."

Richey further alleged that Hale made defamatory statements through telephone calls and text messaging to residents and family members in Texas and that Hale used facebook.com as a medium to defame her to multiple recipients whom she knew to be in Texas. Richey claimed that the alleged defamatory statements were about the administration of the Wynette Trust and Richey's involvement in the Wynette Trust through her husband. Richey stated that Hale is a beneficiary of the Wynette Trust and that the Wynette Trust is located and administered in Madisonville, Texas.

Regarding Richey's allegations that Hale made defamatory statements to residents and family members in Texas via telephone calls and text messaging,[2] Hale argues that the allegations are insufficient to show that she purposefully availed herself of the privilege of conducting activities within Texas because Richey provided "no details or pertinent information regarding the purported extent, content, volume, nature, timing, or other particulars of Hale's alleged use" of telephone calls or text messages to defame Richey to persons located in Texas. Hale contends that far more detailed and specific allegations have been deemed insufficient to warrant the exercise of specific personal jurisdiction over a nonresident defendant. She cites *McIntosh v. Gilley*, 753 F. Supp. 2d 46 (D.D.C. 2010),[3] *Marsh v. Marsh*, 241 S.W.3d 570 (Tex. App.—El Paso 2007, no pet.),[4] *Linton v. Johnson*, No. 5-10-CV-00585 OG (NN), 2011 WL 1743677

---

[2] Because we ultimately conclude that these specific allegations are sufficient to bring Hale within the reach of Texas's long-arm statute, we need not reach the issue of whether the allegations regarding making slanderous statements about Richey to a national publication and using facebook.com as a medium to defame Richey to recipients in Texas, if true, constituted minimum contacts with Texas. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 17.042(2) ("[A] nonresident does business in this state if the nonresident . . . commits a tort in whole *or in part* in this state.") (emphasis added).

[3] In *McIntosh*, Gary McIntosh sued David and Linda Gilley, alleging that they committed libel by sending an email to McIntosh's commanding officer in the U.S. Navy, which claimed that McIntosh was harassing their daughter through his attempts to procure repayment of his investments in a business. 753 F. Supp. 2d at 51-53. "[A]fter considering the jurisdictional allegations in the Complaint, McIntosh's opposition, and David & Linda Gilley's affidavits," the court held that McIntosh "failed to allege specific, non-conclusory allegations that establish[ed] personal jurisdiction over David & Linda Gilley under the District's long-arm statute." *Id.* at 59. The court noted that McIntosh's Complaint did not allege where David and Linda Gilley created and sent the email at issue. *Id.* at 58. Furthermore, although McIntosh's opposition stated that the email "ruined [his] Naval career from the District of Columbia" and that "injury was caused by emails sent from D.C.," these statements were merely conclusory. *Id.* at 58-59. McIntosh did not explain how he knew that the email was sent from the District and did not support the assertion in an affidavit; whereas, both David and Linda Gilley disavowed by affidavit "engag[ing] in any communication with the Plaintiff's superior officers within the District of Columbia or any other jurisdiction." *Id.*

[4] In *Marsh*, Curtis Marsh, a Texas attorney, sued his stepmother, Sharon Marsh, an Illinois resident, for tortious interference with business and contractual relationships, tortious interference with

(W.D. Tex. May 5, 2011),[5] and *Dukatt v. Dukatt*, --- S.W.3d ---, ---, 2011 WL 2120794, at *5 (Tex. App.—Dallas May 31, 2011, pet. denied).[6] These cases are distinguishable from the present case.

First, the *Marsh* and *Dukatt* courts emphasized the fact that the only contact with Texas that the nonresident defendant had in each of those cases was a single telephone call. *See Dukatt*, 2011 2120794, at *5; *Marsh*, 241 S.W.3d at 576-77. Here, Richey alleges more than one contact. She claimed that Hale made defamatory statements to residents and family members in Texas through "telephone calls[] and text messaging." Moreover, while these contacts may still be minimal, in analyzing minimum contacts, it is not the number, but rather the quality and nature of the nonresident defendant's

---

prospective business relationships, slander and defamation, invasion of privacy, and intentional infliction of emotional distress. 241 S.W.3d at 572. All of the claims arose from Curtis's efforts to purchase an Illinois title company owned by his father and Sharon's alleged interference with the purchase. *Id.* Sharon filed a special appearance, and the trial court granted it. *Id.* at 573. On appeal, Curtis argued that Sharon was amenable to specific jurisdiction because she made a telephone call from Illinois to Curtis's wife in Texas and Curtis's claims against Sharon arose from that call. *Id.* at 576. The El Paso court disagreed. Citing *Michiana*, 168 S.W.3d at 784, the court explained that "the only issue in deciding the specific jurisdiction issue is whether by making this single telephone call Sharon purposefully availed herself of the privileges and benefits of conducting activities within Texas, thus invoking the benefits and protections of its laws." *Marsh*, 241 S.W.3d at 576. The court concluded that "this single contact does not evidence the 'purposeful availment' necessary for finding specific jurisdiction." *Id.* at 577.

[5] In *Linton*, Douglas L. Johnson and Johnson & Johnson, L.L.P. represented two separate clients in two California cases. 2011 WL 1743677, at *1. In the first case, the Johnson defendants represented Jo Armuth, and John Linton was a defendant. *Id.* In the second case, the Johnson defendants represented Nancy Lee Grahn. Linton was not a party to the Grahn case but was financially tied to the business entities sued in the Grahn case. *Id.* Linton argued that the court had specific jurisdiction over the Johnson defendants because the "[d]efendants directed a serious, purposeful and extensive set of communications to Texas, to engage in business transactions with a Texas domiciliary." *Id.* at *2. Specifically, Linton complained about ten telephone calls and forty emails about settling the Grahn lawsuit. *Id.* at *3. The court held that these allegations did not support specific jurisdiction in Texas because the communications were substantially related to California litigation, not Texas. *Id.*

[6] Relying on *Marsh*, the Dallas court in *Dukatt* also concluded that an Arizona defendant's single telephone call to the Dallas Police Department did not demonstrate that he was amenable to specific jurisdiction. --- S.W.3d at ---, 2011 WL 2120794, at *5.

contacts with the forum state that is important. *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 230 n.11 (Tex. 1991)). Hale argues that "nothing Richey has ever alleged demonstrates Hale purposefully availed herself of the laws of the state of Texas by seeking a benefit, advantage, or profit in this form [sic]." We disagree. Accepting Richey's allegations as true, Hale was clearly seeking a benefit, advantage, or profit in Texas by making defamatory statements about the administration of a trust and about Richey's involvement in a trust that is located and administered in Texas and of which she is a beneficiary. *Cf. Marsh*, 241 S.W.3d at 572 (no specific jurisdiction where Illinois resident's telephone call to Texas was about purchase of *Illinois* business).

Next, unlike in *McIntosh* and *Linton*, Richey alleges specific acts connecting Hale with the forum and the litigation. *See Moki Mac*, 221 S.W.3d at 575-76 ("[W]hen specific jurisdiction is alleged, we focus the minimum-contacts analysis on the 'relationship among the defendant, the forum[,] and the litigation.'"). Richey alleges that Hale contacted residents and family members *in Texas* through telephone calls and text messaging and that in these contacts, Hale made defamatory statements about Richey's involvement in the Wynette Trust and the administration of the Wynette Trust, which is located and administered in Texas and of which Hale is a beneficiary. These alleged defamatory statements form the basis for Richey's claims, at least in part. Accordingly, we conclude that Richey's allegations, if true, would constitute minimum contacts with Texas such that Texas could exercise personal jurisdiction over Hale. *See Morrill v. Cisek*, Nos. 01-03-01336-CV, 01-04-00266-CV, 2005 WL 2123714, at *3 (Tex. App.—

Houston [1st Dist.] Aug. 31, 2005, pet. denied) (mem. op.) (holding that defendant had sufficient minimum contacts with Texas to subject her to personal jurisdiction where there was direct relationship between defendant, her purposeful contacts with plaintiff's employer and others located in Texas, and plaintiff's defamation claim).[7] We thus hold that Richey has pleaded sufficient allegations to bring Hale within the reach of Texas's long-arm statute. We overrule Hale's fourth issue.

**B.    Hale's Burden to Negate All Bases of Personal Jurisdiction Alleged by Richey**

We next turn to Hale's sixth issue in which she argues that she presented sufficient evidence to meet her jurisdictional burden, to defeat Richey's allegations, and to preclude the trial court's exercise of personal jurisdiction over her.

Once the plaintiff has pleaded sufficient jurisdictional allegations, the defendant filing a special appearance bears the burden to negate all bases of personal jurisdiction alleged by the plaintiff. *Kelly*, 301 S.W.3d at 658. Hale relies on her first supplemental affidavit to show that she met this burden. Richey responds that Hale's first supplemental affidavit was not timely filed and, thus, should not be considered.

First, we must address Hale's argument that Richey's complaint about the timing of the first supplemental affidavit is forfeited because she never objected to it in the trial court. Hale's first supplemental affidavit was filed in the trial court, but it was not brought to the court's attention. The court did not request it, and the record does not indicate that it was ever submitted to the consideration of the judge. Thus, it was not

---

[7] *McIntosh* is also distinguishable because the court's analysis in that case was not limited to the legal question of whether the plaintiff's allegations, even if true, were sufficient to permit the trial court to exercise personal jurisdiction over the nonresident defendant. Instead, the *McIntosh* court was also examining the plaintiff's and defendant's evidence, or lack thereof. *See McIntosh*, 753 F. Supp. 2d at 58-59.

evidence before the court that required an objection. *See In re Cont'l Ins. Co.*, 994 S.W.2d 423, 427 (Tex. App.—Waco 1999, orig. proceeding) ("An affidavit that is simply filed with the clerk and is in no way brought to the trial court's attention is not evidence."); *see also Tempest Broad. Corp. v. Imlay*, 150 S.W.3d 861, 870 (Tex. App.—Houston [14th Dist.] 2004, no pet.) ("Since the late-filed affidavit was not properly before the trial court pursuant to 120a, it makes no sense to penalize Tempest for failing to obtain a ruling from the trial court on its objection to the very filing of which it complains. Had appellees requested leave of court to re-open the evidence in a subsequent hearing to add the tardy affidavit, Tempest at least would have been given the right to present controverting evidence and cross-examine. As it is, appellees have gotten in the last word while Tempest was silenced by section 120a."). Richey may urge her complaint even though she did not object to the first supplemental affidavit.

Furthermore, we agree with Richey that Hale's first supplemental affidavit was untimely and, therefore, not properly before the trial court and should not be considered. Rule 120a states, "The affidavits, if any, shall be served at least seven days before the hearing." TEX. R. CIV. P. 120a(3). Here, Hale's first supplemental affidavit was filed six days *after* the special appearance hearing. The record does not show when it was served, but it was not signed and notarized until February 23, 2011, five days after the hearing; thus, it could not have been served until at least that time.

Hale argues, "Richey's decision to file her response moments before the hearing, and reveal it to the trial court only after the hearing began, precluded Hale from filing an affidavit which entirely negates Richey's jurisdictional allegations any earlier." As

we held above, Hale's complaints about the untimeliness of Richey's amended petition and response were not preserved for our review and do not justify her late-filed affidavit. *See* TEX. R. APP. P. 33.1(a)(1); *see also Tempest Broad. Corp.*, 150 S.W.3d at 869-70 (holding affidavit filed after hearing should not be considered even though trial court requested a reply from defendants and plaintiff did not file its response and first amended petition containing additional jurisdictional allegations until day before hearing). Hale's first supplemental affidavit was not properly before the trial court and should not be considered.

Excluding the first supplemental affidavit, Hale's remaining evidence consists of her original affidavit attached to her "First Supplemental Special Appearance" filed before the special-appearance hearing. In the original affidavit, Hale stated under oath that she is not a Texas resident and resides in California. If Richey had failed to plead facts bringing Hale within reach of the long-arm statute, this evidence that Hale does not live in Texas would be sufficient to negate jurisdiction. However, because we concluded above that Richey has pleaded sufficient allegations to bring Hale within the reach of Texas's long-arm statute, Hale must negate all bases of personal jurisdiction alleged by Richey. *See Kelly*, 301 S.W.3d at 658-59.

Richey has alleged that the court should exercise personal jurisdiction over Hale based on specific jurisdiction. The only statement in Hale's original affidavit that attempts to negate Richey's allegations of specific jurisdiction is that she has never committed a tort in Texas. Richey argues that this statement is conclusory and, thus, should not be considered. We agree. *See Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex.

1984) (holding that affidavit must set forth facts, not mere legal conclusions); *Wright v. Sage Eng'g, Inc.*, 137 S.W.3d 238, 250 n.8 (Tex. App.—Houston [1st Dist.] 2004, pet. denied). Rule 120a requires that the affidavits, if any, "shall set forth specific facts as would be admissible in evidence." TEX. R. CIV. P. 120a(3).

For the foregoing reasons, we thus conclude that Hale did not satisfy her burden to negate all bases of personal jurisdiction alleged by Richey and overrule Hale's sixth issue.[8]

## C. Trial Court's Denial of Hale's Special Appearance

Finally, we address Hale's first three issues in which she contends generally that the trial court committed reversible error in denying her special appearance; that as a California resident, her constitutional right to due process was violated by the trial court's exercise of personal jurisdiction over her; and that the trial court erred in concluding that it had specific personal jurisdiction over her. In light of our holdings above, we overrule these issues.

### CONCLUSION

Having overruled all Hale's issues, we affirm the trial court's order denying her special appearance.

REX D. DAVIS
Justice

---

[8] In her brief, Hale notes on several occasions that Richey never introduced any evidence. Because Hale did not satisfy her burden to negate all bases of personal jurisdiction alleged by Richey, Richey was never *required* to present her own evidence affirming her allegations. *See Kelly*, 301 S.W.3d at 659.

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed
Opinion delivered and filed January 11, 2012
[CV06]