**Jacylyn DUKATT, Appellant,**

v.

**Mitchel DUKATT, Appellee.**

**No. 05–10–01431–CV.**

Court of Appeals of Texas, Dallas.

May 31, 2011.

Allen Landerman, Law Office of Jeffrey R. Parker, P.C., Jeffrey R. Hacker, Amschler, Hacker, Landerman, P.C., Addison, for Appellant.

John W. Stilwell, Law Office of John Stilwell, Addison, for Appellee.

Before Justices MORRIS, FITZGERALD, and LANG–MIERS.

## OPINION

Opinion By Justice LANG–MIERS.

This is an interlocutory appeal from an order granting a special appearance. We affirm.

### BACKGROUND

Appellant Jacylyn Dukatt, who also goes by the name Cookie Cohen Dukatt, was married to Sidney Dukatt at the time of his death. Three months after Sidney died, Jacylyn sued Jeffre and Mitchel[1] Dukatt, Sidney's sons from a prior marriage, seeking damages for intentional infliction of emotional distress because Jeffre and Mitchel allegedly engaged in "stalking behavior" around the time of Sidney's death.

The facts alleged in Jacylyn's petition are largely undisputed. On the day before Sidney died, he was at home receiving hospice care when Mitchel called the Dallas Police Department and requested a welfare check on his father. Next, on the day after Sidney died, Jeffre "reported a homicide to the Dallas Police Department indicating that [Jacylyn] had murdered [Jeffre's] father." Shortly after Sidney's death, Jeffre took out an obituary for Sidney in multiple newspapers stating that Sidney died after a long battle with "cookieitus." According to Jacylyn, she has received at least 40 envelopes from various places around the United States containing a copy of that obituary, including one from "Chuck Manson with a return address of San [Quentin], California."

In her original petition Jacylyn alleged that Jeffre lives in New Mexico and Mit-

---

1. In the trial court and on appeal (1) Jacylyn spelled "Mitchell" with two "l"s and (2) Mitchel spelled his name with one "l." For consistency, we use Mitchel's spelling of his name throughout this opinion, including when quoting from Jacylyn's filings.

chel lives in Arizona, but that they are both subject to jurisdiction in Texas because "the acts complained of occurred in whole or in part within the State of Texas." In response to the lawsuit, Jeffre filed a pro se general denial. Mitchel, on the other hand, filed a pro se special appearance contesting the trial court's exercise of personal jurisdiction over him on the ground that he "is not amenable to process issued by the courts of this State" because he is a resident of Arizona and he "did not have any involvement in the planning, execution, or financing of any of the actions complained of by [Jacylyn], either in Texas or anywhere else." In response to Mitchel's special appearance, Jacylyn amended her petition to add the following jurisdictional allegations:

[Jacylyn] would show that this court can maintain both general and specific jurisdiction over Mitchel based upon the following facts:

A. Mitchel has continuing contacts with the state of Texas as a result of his employment where he contacts clients and/or customers within the state of Texas, namely in El Paso and Austin, or discusses business with his business associates within the state of Texas and has maintained these contacts for many months prior to December 16, 2009, and to the present. In addition, there have been times where Mitchel has actually worked for his employer within the state of Texas beyond his customers in El Paso and Austin.

B. Mitchel has admitted contacting the Dallas Police Department to initiate a welfare check when such a welfare check was unnecessary and done solely for the purpose of harassing and inflicting intentional emotional distress on [Jacylyn]. Further, Mitchel has admitted knowing that Jeffre filed a false police report to the Dallas Police Department attempting to initiate a homicide investi-

gation against [Jacylyn] for the murder of [Jacylyn's] husband and failed to take any steps to rectify the situation. Further, [Jacylyn] believes that, despite Mitchel's protests to the contrary, he was very much involved in the decision to go forward and attempt to initiate such investigation. Both of these events took place within Dallas County.

Mitchel retained a lawyer and filed a brief in support of his special appearance, along with supporting evidence. In his brief, Mitchel argued that (1) "[t]he only things that [Jacylyn] complains about are things that happened outside of the State of Texas," and (2) "[e]ven if Texas was within Mitchel's territory, that should not be enough to confer jurisdiction upon Mitchel."

The record demonstrates that the trial court held a hearing and a teleconference concerning Mitchel's special appearance, after which both sides filed additional briefing and evidence in support of their respective positions. Jacylyn submitted a memorandum of law and excerpts from Mitchel's deposition, which, according to Jacylyn, demonstrated that Mitchel was subject to general and specific jurisdiction. Citing Mitchel's deposition, Jacylyn essentially argued that Mitchel was amenable to general jurisdiction in Texas because (1) in the months before and after Sidney's death, Mitchel averaged "anywhere from 4 to 7 business calls to Texas per month," (2) Mitchel "still has at least 2 active customers and could have as many as four or five in El Paso, Texas," and (3) Mitchel "physically worked in Austin for a week." According to Jacylyn, Mitchel's deposition also demonstrated that Mitchel was amenable to specific jurisdiction in Texas because (1) Mitchel called the Dallas Police Department for a welfare check, "intending that uniformed officers would show up

at [Jacylyn's] door," (2) Mitchel knew his brother filed a false police report claiming that Sidney had been murdered and "did absolutely nothing to stop that investigation," and (3) Mitchel called a doctor in Dallas and may have asked the doctor "if he had been contacted by a homicide detective."

Mitchel filed a letter brief and an affidavit in which he attested to the following facts: (1) on the day before Sidney died, Mitchel called the Dallas Police Department from Arizona to check on his father's welfare after people at his father's house "refused to tell [him] anything," (2) sometime after Sidney died Mitchel learned that Jeffre "called someone at the Dallas Police Department purportedly to inquire about [his] father's death," and (3) Mitchel has "some friends and business associates in Texas."

After the parties filed their additional briefing and evidence the trial court issued an order granting Mitchel's special appearance. The trial court did not respond to Jacylyn's request for findings of fact and conclusions of law. Jacylyn timely appealed from the trial court's order granting Mitchel's special appearance.

## APPLICABLE LAW

### Personal Jurisdiction

▌ Texas courts may exercise personal jurisdiction over a nonresident defendant only if (1) the Texas long-arm statute permits the exercise of jurisdiction, and (2) the assertion of jurisdiction satisfies constitutional due-process guarantees. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 657 (Tex.2010). Personal jurisdiction over a nonresident defendant satisfies constitutional due-process guarantees when the nonresident defendant has established minimum contacts with the forum state and the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Kelly*, 301 S.W.3d at 658.

▌ Minimum contacts are established when the nonresident defendant purposefully avails himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Kelly*, 301 S.W.3d at 657–58. A defendant's contacts with a forum can give rise to either specific or general jurisdiction. *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 337 (Tex.2009). Specific jurisdiction is established if the defendant's alleged liability arises out of or relates to the defendant's contacts with the forum state. *Id.* at 338. In contrast, general jurisdiction is established if the defendant has had continuous and systematic contacts with the forum, regardless of whether the defendant's alleged liability arises from those contacts. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex.2007). "A general jurisdiction inquiry, therefore, is very different from a specific jurisdiction inquiry and involves a more demanding minimum contacts analysis, with a substantially higher threshold." *PHC–Minden, L.P. v. Kimberly–Clark Corp.*, 235 S.W.3d 163, 168 (Tex.2007) (internal quotations and citations omitted).

### Special Appearances and Standard of Review

▌ The plaintiff bears the initial burden to plead sufficient allegations to invoke jurisdiction under the Texas long-arm statute. *Moki Mac*, 221 S.W.3d at 574. Once the plaintiff has pleaded sufficient jurisdictional allegations, a defendant who contests the trial court's exercise of personal jurisdiction bears the burden of

negating all bases of jurisdiction alleged by the plaintiff. *Id.*

The ultimate question of whether a trial court has personal jurisdiction over a nonresident defendant is a question of law. *Moki Mac*, 221 S.W.3d at 574. And because jurisdiction is a question of law, an appellate court reviews a trial court's determination of a special appearance de novo. *Id.*

## ANALYSIS

### First Issue

In her first issue Jacylyn argues that Mitchel's special appearance was "fatally defective" and should have been denied because it was not sworn. Jacylyn does not contend, however, and the record does not demonstrate, that Jacylyn raised any complaint below about the defect in Mitchel's special appearance. "[A]ny complaint that a special appearance is not verified must be brought to the trial court's attention to give the moving party an opportunity to cure the defect." *Haddad v. ISI Automation Int'l, Inc.*, No. 04–09–00562–CV, 2010 WL 1708275, at *2 (Tex.App.-San Antonio Apr. 28, 2010, no pet.) (mem. op.).

To support her argument, Jacylyn relies on *Prosperous Maritime Corp. v. Farwah*, 189 S.W.3d 389 (Tex. App.-Beaumont 2006, no pet.), in which the appellate court upheld the trial court's denial of a special appearance because it was not sworn as required by Texas Rule of Civil Procedure 120a. *See* TEX.R. CIV. P. 120a(1) (special appearance "shall be made by sworn motion"). The material difference between this case and *Farwah*, however, is that in this case the plaintiff appeals from the granting of a special appearance, and in *Farwah* the defendants appealed from the denial of a special appearance. As the *Farwah* court ex-

plained, appellate courts are required to affirm a trial court's ruling on a special appearance "on any legal theory finding support in the evidence." *Farwah*, 189 S.W.3d at 391. Applying that rule, if a trial court denies a special appearance, and the record demonstrates that the special appearance was defective under rule 120a because it was not sworn, we are required to affirm that ruling on appeal. *See, e.g., Siemens AG v. Houston Cas. Co.*, 127 S.W.3d 436, 439 (Tex.App.-Dallas 2004, pet. dism'd by agr.) ("[A]ppellants' special appearance was not sworn or verified. Therefore, we cannot conclude the trial court erred in denying it."). On the other hand, when a trial court grants a special appearance, we cannot reverse the trial court's ruling on a ground not raised below. *See, e.g., Anchia v. DaimlerChrysler AG*, 230 S.W.3d 493, 500 n. 1 (Tex. App.-Dallas 2007, pet. denied) (declining to address plaintiffs' argument supporting reversal of trial court's order granting defendant's special appearance because plaintiffs "did not present this argument to the trial judge"); *cf. Sani v. Powell*, 153 S.W.3d 736, 754 n. 12 (Tex.App.-Dallas 2005, pet. denied) ("even if [appellant] is correct, we cannot reverse and render judgment on a ground not raised in his motion for summary judgment"). As a result, when a trial court grants a special appearance and a plaintiff seeks to reverse that ruling on appeal on the ground that the special appearance was not sworn, the plaintiff must demonstrate that the complaint about the defect in the special appearance was raised in the trial court. *See Haddad*, 2010 WL 1708275, at *2.

In this case, because the trial court granted Mitchel's special appearance, and because Jacylyn did not complain below about the absence of a verification, we cannot reverse the trial court's order on that basis. *See id.* ("ISI failed to raise

the absence of verification in the trial court, raising it for the first time on appeal. Accordingly, we hold ISI has failed to preserve this complaint."); *see also* Tex. R.App. P. 33.1. Moreover, because Jacylyn submitted evidence in response to the special appearance, and opposed the special appearance on the merits, we conclude that the issues raised in Mitchel's special appearance were tried by consent. *See Gen. Refractories Co. v. Martin*, 8 S.W.3d 818, 820 n. 1 (Tex.App.-Beaumont 2000, pet. denied) ("though initially presented through a defective [unverified] motion," special appearance was tried by consent because both sides presented evidence and argued the merits at the hearing). We resolve Jacylyn's first issue against her.

### Second Issue

■■■ In her second issue Jacylyn appears to contend that Mitchel did not meet his burden to negate the jurisdictional bases alleged because Mitchel did not deny the jurisdictional facts asserted by Jacylyn. We disagree. As the supreme court recently explained, "[t]he defendant can negate jurisdiction on either a factual or legal basis." *Kelly*, 301 S.W.3d at 659. A defendant negates jurisdiction on a factual basis by presenting evidence to disprove the plaintiff's jurisdictional allegations. *Id.* Alternatively, a defendant negates jurisdiction on a legal basis by showing that even if the plaintiff's jurisdictional allegations are true, the allegations are legally insufficient to establish personal jurisdiction. *Id.* In this case, instead of disputing the jurisdictional facts that Jacylyn alleged and relied upon, Mitchel challenged the trial court's exercise of personal jurisdiction on a legal basis by essentially arguing that, even if the jurisdictional facts are true, they are not sufficient to support the exercise general or specific jurisdiction. As a result, Mitchel was not required to deny the jurisdictional facts asserted by Jacylyn in order to ne-

gate jurisdiction. *See generally Botter v. Am. Dental Ass'n*, 124 S.W.3d 856, 860 n. 1 (Tex.App.-Austin 2003, no pet.) (defendant "did not have to negate every allegation—it had to negate every basis for jurisdiction"). We resolve Jacylyn's second issue against her.

### Third Issue

■■■ In her third issue Jacylyn argues that the trial court erred when it granted Mitchel's special appearance because Mitchel is subject to general jurisdiction. Because we construe Mitchel's challenge as a legal challenge instead of a factual one, we take as true the undisputed jurisdictional facts alleged and relied upon by Jacylyn and determine whether those facts demonstrate that Mitchel has had continuous and systematic contacts with Texas. *See, e.g., Martinez v. de Anda*, No. 13–09–00277–CV, 2010 WL 2543892, at \*9–10 (Tex.App.-Corpus Christi June 24, 2010, no pet.) (mem. op.) (because defendants' special appearance challenged jurisdiction on legal basis, appellate court took alleged and undisputed contacts as true and based decision on those contacts).

On appeal, Jacylyn argues that Mitchel has had continuous and systematic contacts with Texas because (1) he made a number of telephone calls to Texas, (2) he has "at least two customers that he regularly deals with located in El Paso, Texas," and (3) he visited customers in El Paso one time three years ago. We disagree. Mitchel's telephone calls to Texas do not demonstrate continuous and systematic contacts. *See e.g., N803RA, Inc. v. Hammer*, 11 S.W.3d 363, 368 (Tex.App.-Houston [1st Dist.] 2000, no pet.) (nonresident defendant's contact of Texas company, numerous phone calls to the company, and receiving commissions by checks drawn on Texas bank insufficient to support general jurisdiction). Likewise, Mitchel's one trip

to Texas within the last three years was insufficient to subject him to general jurisdiction. *See Lang v. Capital Resource Invs., I & II, LLC,* 102 S.W.3d 861, 867 (Tex.App.-Dallas 2003, no pet.) ("Occasional travel to Texas by corporate personnel is insufficient to establish continuous and systematic contacts by the employee."); *see also Am. Type Culture Collection, Inc. v. Coleman,* 83 S.W.3d 801, 809 (Tex.2002) ("ATCC's attendance at the five Texas conferences does not support the exercise of general jurisdiction."); *Moni Pulo Ltd. v. Trutec Oil & Gas, Inc.,* 130 S.W.3d 170, 179 (Tex.App.-Houston [14th Dist.] 2003, pet. denied) ("[I]t is difficult to say that two or three visits a year are continuous and systematic."). We conclude that Mitchel met his burden to negate general jurisdiction. We resolve Jacylyn's third issue against her.

**Fourth Issue**

 In her fourth issue Jacylyn argues that the trial court erred when it granted Mitchel's special appearance because Mitchel is subject to specific jurisdiction. Jacylyn argues that Mitchel is amenable to specific jurisdiction because (1) he called the Dallas Police Department to initiate a welfare check, and (2) after he learned that his brother had "attempted to start a murder investigation," Mitchel "took no steps to stop that investigation." We disagree.

 The "touchstone" of jurisdictional due process is "purposeful availment." *Spir Star AG v. Kimich,* 310 S.W.3d 868, 873 (Tex.2010) (quoting *Michiana Easy Livin' Country, Inc. v. Holten,* 168 S.W.3d 777, 784 (Tex.2005)). "Purposeful availment requires a defendant to seek some "benefit, advantage, or profit by 'availing' itself of the jurisdiction." *Id.*

Mitchel's single telephone call to Texas is analogous to the single telephone call to Texas at issue in *Marsh v. Marsh,* 241 S.W.3d 570 (Tex.App.-El Paso 2007, no

pet.). In *Marsh,* Curtis Marsh, a Texas resident, sued his stepmother, Sharon Marsh, an Illinois resident. Sharon filed a special appearance and the trial court granted it. On appeal, Curtis argued that Sharon was amenable to specific jurisdiction because she made a telephone call from Illinois to Curtis's wife in Texas and Curtis's claims against Sharon arose from that call. The El Paso court disagreed. Citing *Michiana,* the court explained that "the only issue in deciding the specific jurisdiction issue is whether by making this single telephone call Sharon purposefully availed herself of the privileges and benefits of conducting activities within Texas, thus invoking the benefits and protections of its laws." *Marsh,* 241 S.W.3d at 576. And the court concluded that "this single contact does not evidence the 'purposeful availment' necessary for finding specific jurisdiction." *Id.* at 577. Likewise, we conclude that Mitchel's single telephone call to the Dallas Police Department does not demonstrate that Mitchel is amenable to specific jurisdiction.

And with respect to Jacylyn's other argument, the fact that Mitchel made no effort in Arizona to stop a murder investigation in Texas does not support the exercise of specific jurisdiction over Mitchel in Texas because non-action in Arizona does not demonstrate that Mitchel purposefully availed himself of the benefits and protections of Texas law. We conclude that Mitchel met his burden to negate specific jurisdiction. We resolve Jacylyn's fourth issue against her.

**Fifth Issue**

In her fifth issue Jacylyn complains that exhibits attached to Mitchel's brief and affidavit "were never properly before the court" because (1) the exhibits attached to Mitchel's brief "are not supported by any affidavit" and certain exhibits attached to

his affidavit "are not identified at all" in that affidavit. The exhibits appear to be intended to demonstrate, for example, that Jeffre took out what he describes as three "parody obituaries" after Jacylyn omitted Jeffre's and Mitchel's names from Sidney's obituary in the Dallas Morning News.

We decline to address Jacylyn's fifth issue because our resolution of this issue would not change the outcome of this appeal. *See generally* Tex.R.App. P. 47.1 (opinion must address every issue raised and necessary to final disposition of appeal). More specifically, regardless of Mitchel's reason for filing those exhibits, and regardless of whether they were properly before the court, because Mitchel did not dispute Jacylyn's jurisdictional allegations, and instead negated jurisdiction on a legal basis, the exhibits Jacylyn complains about are not germane to our analysis of whether Mitchel met his burden to negate general and specific jurisdiction.

**Sixth Issue**

In her sixth issue Jacylyn argues that if we conclude that the trial court was correct in granting Mitchel's special appearance, the appropriate relief is to abate this appeal and require the trial court to issue findings of fact and conclusions of law. We disagree. It is well settled law that a trial court is not required to file findings of fact and conclusions of law in connection with its order on a special appearance. *See* Tex.R.App. P. 28.1(c) ("*Appeals of Interlocutory Orders.* The trial court need not file findings of fact and conclusions of law but may do so within 30 days after the order is signed."); *see also Waterman S.S. Corp. v. Ruiz*, 355 S.W.3d 387, 428 (Tex.App.-Houston [1st Dist.] 2011, pet. filed) (op. on reh'g) (because rules of procedure do not impose duty on trial court to file findings of fact and conclusions of law after ruling on special appearance, appellants "demonstrate no 'in-

trinsic error' by the trial court's failure to file findings and conclusions"). We resolve Jacylyn's sixth issue against her.

### Conclusion

We conclude that the trial court did not err by granting Mitchel's special appearance. We affirm the trial court's order.