**AFFIRM; Opinion Filed May 30, 2013.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-00606-CV

**VOLTAIX, LLC, Appellant**
V.
**JOHN AJONGWEN, Appellee**

On Appeal from the 422nd Judicial District Court
Kaufman County, Texas
Trial Court Cause No. 80351-422

## OPINION

Before Justices Moseley, Fillmore, and Myers
Opinion by Justice Moseley

In this interlocutory appeal, Voltaix, LLC appeals the trial court's order granting the special appearance of John Ajongwen. In two issues, Voltaix contends Ajongwen failed to carry his burden to negate all bases for personal jurisdiction alleged in the petition and the facts demonstrate that Texas may exercise specific jurisdiction over Ajongwen. We conclude that Ajongwen's single trip to Texas is not substantially connected to the operative facts of this trade secret litigation and, thus, Ajongwen negated all bases for personal jurisdiction alleged in the pleadings. We affirm the trial court's order granting Ajongwen's special appearance.

## BACKGROUND

Voltaix, with a principal place of business in New Jersey, manufactures germane gas, a specialty gas used in the semiconductor and solar energy industries. Voltaix claims to have

various trade secrets about the manufacturing process that give it a competitive advantage in the market. Two former Voltaix employees who worked at its New Jersey plant, Mathias C. Tezock and Ronald Bachman, allegedly misappropriated the trade secrets in violation of their employment agreements. After leaving Voltaix's employment in New Jersey, Tezock purchased property in Texas and formed Metaloid Precursors, Inc., a Texas corporation. Tezock is the president and Bachman is the vice-president of Metaloid.

Voltaix sued Metaloid, Tezock, and Bachman in Texas for misappropriation of trade secrets and other causes of action. Voltaix alleged that Metaloid built a chemical plant in Terrell, Texas in order to manufacture germane gas using the trade secrets misappropriated from Voltaix.

Voltaix later joined as a defendant in the suit John Ajongwen, an investor in Metaloid and its chairman of the board. It alleged Ajongwen assisted and participated in the torts of Tezock and Metaloid, assisted and encouraged the misappropriation of trade secrets by Tezock and Metaloid, and conspired with Tezock and Metaloid to misappropriate the trade secrets. Voltaix alleged the trial court had jurisdiction over Ajongwen because he conducted business and committed torts in Texas; specifically, Voltaix alleged Ajongwen traveled to Texas one time to assist in starting up the water purification system and to conduct a safety inspection at Metaloid's plant.

Ajongwen, a chemical engineer and former employee of Merck & Co., is a New Jersey resident. He filed a special appearance alleging he was a nonresident defendant not amenable to the trial court's jurisdiction; Ajongwen attached his affidavit and filed a brief in support of his special appearance where he asserted his attached deposition testimony showed he did not have minimum contacts with Texas. In response, Voltaix argued Ajongwen failed to negate Voltaix's allegations of specific jurisdiction and that Ajongwen had sufficient contacts with Texas to

–2–

confer personal jurisdiction. In support of its response, Voltaix attached and incorporated Ajongwen's oral deposition and excerpts from the oral deposition of Dr. Leisl Dukhedin-Lalla.

The trial court heard argument on the special appearance, but the parties did not submit additional evidence at the hearing. The trial court granted Ajongwen's special appearance and did not file findings of fact or conclusions of law. Voltaix appeals.

## STANDARD OF REVIEW

Whether a court can exercise personal jurisdiction over nonresident defendants is a question of law, and thus we review de novo the trial court's ruling on a special appearance. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007); *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). When a trial court does not issue findings of fact or conclusions of law, "all facts necessary to support the judgment and supported by the evidence are implied." *BMC Software*, 83 S.W.3d at 795. We will affirm the trial court's ruling on any legal theory finding support in the record. *See id.*; *Dukatt v. Dukatt*, 355 S.W.3d 231, 237 (Tex. App.—Dallas 2011, pet. denied).

## APPLICABLE LAW

### A. Personal Jurisdiction

Texas courts may exercise personal jurisdiction over a nonresident defendant if: (1) the Texas long-arm statute permits the exercise of jurisdiction, and (2) the assertion of jurisdiction satisfies constitutional due process guarantees. *Kelly v. Gen. Interior Constr., Inc.,* 301 S.W.3d 653, 657 (Tex. 2010). The long-arm statute reaches "as far as the federal constitutional requirements for due process will allow." *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002) (quoting *Guardian Royal Exch. Assur., Ltd. v. English China Clays, P.L.C.*, 806 S.W.2d 223, 226 (Tex. 1991)). Thus, the long-arm statute's requirements are satisfied if exercising jurisdiction comports with federal due process limitations. *Id.* Personal

jurisdiction over a nonresident defendant satisfies constitutional due process guarantees when (1) the nonresident defendant has established minimum contacts with the forum state and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985).

Minimum contacts are established when the nonresident defendant purposefully avails himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Kelly*, 301 S.W.3d at 657–58. There are three parts to the purposeful-availment inquiry: (1) only the defendant's contacts are relevant; (2) the contact must be purposeful, not random, fortuitous, or attenuated; and (3) the defendant must seek some advantage, benefit, or profit by availing itself of the forum. *See Moki Mac*, 221 S.W.3d at 575.

In addition to the purposeful-availment requirement, the defendant's contacts with the forum must give rise to either specific or general jurisdiction. *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 337 (Tex. 2009). Voltaix concedes that Texas cannot exercise general jurisdiction over Ajongwen, and has only challenged the trial court's ruling with regard to specific jurisdiction. Our inquiry is limited accordingly.

Specific jurisdiction is established if the defendant's alleged liability arises out of or relates to the defendant's contacts with the forum state. *Moki Mac*, 221 S.W.3d at 575–76. The specific jurisdiction analysis focuses on the relationship among the defendant, the forum, and the litigation. *Id.*

## B. Special Appearance

The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the provisions of the Texas long-arm statute. *BMC Software*, 83 S.W.3d at 793. Once the plaintiff has pleaded sufficient jurisdictional allegations, a nonresident defendant challenging personal jurisdiction in Texas must file a verified special appearance. *See*

TEX. R. CIV. P. 120a. To prevail, the nonresident defendant must negate all grounds for personal jurisdiction alleged by the plaintiff. *Kelly*, 301 S.W.3d at 658. If the defendant does so, the burden shifts back to the plaintiff to show the court has personal jurisdiction over the defendant as a matter of law. *Alliance Royalties, LLC v. Boothe*, 329 S.W.3d 117, 120 (Tex. App.—Dallas 2010, no pet.).

The nonresident defendant can negate jurisdiction on either a factual or legal basis. *Kelly*, 301 S.W.3d at 659. A factual attack requires the defendant to present evidence that it has no contacts with Texas, effectively disproving the plaintiff's allegations. *Id.* In a legal attack, the defendant can show that even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction because the defendant's contacts fall short of purposeful availment, the plaintiff's claims do not arise from the contacts (in cases asserting specific jurisdiction over the defendant), or that traditional notions of fair play and substantial justice are offended by the exercise of jurisdiction. *Id.*

## ANALYSIS

Voltaix contends the trial court erred by granting Ajongwen's special appearance because Ajongwen failed to negate specific jurisdiction and the undisputed facts demonstrate that Texas courts may exercise specific jurisdiction over him.

### A. Burden to Negate Jurisdictional Allegations

In its first issue, Voltaix argues Ajongwen failed to negate all bases for jurisdiction alleged by Voltaix. Voltaix alleged Ajongwen was liable for: (1) "assisting and participating in the tortious acts of Tezock and Metaloid"; (2) "assisting and encouraging the misappropriation of trade secrets by Tezock and Metaloid"; and (3) "conspiracy to misappropriate Voltaix's trade

secrets."[1] Voltaix's allegation as to why Texas courts have jurisdiction over Ajongwen is that he travelled to Texas to set up Metaloid's water purification system.[2]

Because Voltaix alleged specific jurisdictional facts, Ajongwen had the burden to do more than prove he was a nonresident of Texas. Whether he met that burden is determined based on a review of the entire record, not merely the pleadings. Pleadings frame the jurisdictional dispute, but are not dispositive. *Kelly*, 301 S.W.3d at 658 n.4. A special appearance is decided on the basis of the pleadings, stipulations, affidavits and attachments filed by the parties, results of discovery, and any oral testimony at the hearing. TEX. R. CIV. P. 120a(3).

In support of the special appearance, Ajongwen submitted his affidavit and portions of his deposition. Voltaix attached all of Ajongwen's deposition to its response to the special appearance and the deposition was admitted into evidence at the hearing. The record indicates that Ajongwen came to Texas one time for a day and a half to oversee the start-up of the water purification system and to check on the ability of the plant to deal with potential leaks of hydrogen gas. Ajongwen did not deny this single contact with Texas. He argued at the hearing

---

[1] It is not necessary to this appeal to discuss the merit of these causes of action. However, personal jurisdiction over a nonresident cannot be premised on contacts imputed from another person or entity. *See Nat'l Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 773 (Tex. 1995) (orig. proceeding) ("we decline to recognize the assertion of personal jurisdiction over a nonresident defendant based solely on the effects or consequences of an alleged conspiracy with a resident in the forum state").

[2] Specifically, Voltaix alleged:

> In 2007, Tezock, seeking funding for the enterprise that ultimately became Metaloid, disclosed to Ajongwen confidential technical information about Voltaix's process for manufacturing germane, including details of its water purification process and specifications, the chemical reactions necessary for manufacture of germane, the identity of Voltaix's customers, suppliers, and the raw materials used in Voltaix's process for manufacturing germane.
>
> . . .
>
> Ajongwen came to Texas in June 2008 to install and/or otherwise work on the water purification system used in the Metaloid plant in accordance with certain confidential Voltaix water purity specifications provided to him by Tezock and to provide technical advice concerning other issues in the manufacture of germane. Ajongwen knew—or at least had knowledge of facts that would put him on notice—that information provided by Tezock about the chemical reactions for making germane and the water purification specifications used in the process and the water purification specification were trade secrets of Voltaix and that use of such information by Tezock and Metaloid was a violation of Voltaix's rights.

that the water purification system installed by Metaloid was a commercially available system and not Voltaix's trade secret.

The only way to determine Voltaix's first issue—whether Ajongwen failed to negate all bases for personal jurisdiction—is to conduct the jurisdictional analysis on the record before the trial court. In other words, Voltaix's first issue adds nothing to the analysis of its second issue, and presents no independent basis for reversing the trial court's order. The real issue is whether Ajongwen's single undisputed contact is sufficient to satisfy the specific jurisdiction standard. We overrule Voltaix's first issue.

## B. Specific Jurisdiction

Thus, we turn to Voltaix's second issue, whether the record shows Ajongwen has sufficient minimum contacts with Texas to support the exercise of specific jurisdiction. To support the exercise of specific jurisdiction in this case, (1) Ajongwen must have made minimum contacts with Texas by purposefully availing himself of the privilege of conducting activities here, and (2) his alleged liability must have arisen from or related to those contacts. *Moki Mac*, 221 S.W.3d at 576. We focus on the second requirement because it is dispositive. The main question is whether Ajongwen's alleged liability arises from or is related to his single undisputed contact with Texas. *See id.* (citing *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414 n.8 (1984)). We decide this question by determining whether Ajongwen's contact with Texas is substantially connected to the operative facts of the litigation. *Id.* at 584–85.

## 1. Ajongwen's Texas Contact

The record indicates Ajongwen travelled to Texas one time to oversee the start-up of the water purification system and to conduct a safety inspection of Metaloid's plant. Ajongwen spent a day and a half at the Metaloid facility in Texas. His visit was prior to the production of any germane gas at the plant. The water purification system was a commercial system purchased

from Siemens. The water purification system was started, but it did not produce the water purification levels Ajongwen and Tezock were looking for. By the time Ajongwen left the plant in Texas, he discussed with Tezock whether they needed the high water purity levels they had originally thought. They later decided the water purity level was not as important as removing certain elements from the water and modified the system accordingly. One of the primary reasons Ajongwen came to Texas was to perform a safety study because of the risk of hydrogen gas leaks.

### 2. Misappropriation of Trade Secrets

To prevail on its claim for misappropriation of trade secrets, Voltaix must establish (1) the trade secret existed; (2) the trade secret was acquired through breach of a confidential relationship or was discovered by improper means; (3) the defendant used the trade secret without authorization; and (4) that Voltaix suffered damages as a result. *See Twister B.V. v. Newton Research Partners, LP*, 364 S.W.3d 428, 437 (Tex. App.—Dallas 2012, no pet.) (citing *Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.,* 300 S.W.3d 348, 366–67 (Tex. App.—Dallas 2009, pet. denied). In addition, Voltaix will be required to prove its allegations supporting personal liability against Ajongwen.

In our specific jurisdiction analysis, we must focus on the relationship among Ajongwen, the litigation, and the forum. *See Moki Mac*, 221 S.W.3d at 585. The operative facts of this litigation will focus on the existence and scope of the alleged trade secrets, the acts of misappropriation by Tezock and Bachman in New Jersey, and the alleged use of the trade secrets by Metaloid at its plant in Texas. In addition, the operative facts will include what Ajongwen did to assist Tezock and Metaloid by giving them technical advice, financial assistance, and encouragement as alleged by Voltaix.

Ajongwen explained in his deposition his past experience with water purification systems in the pharmaceutical industry and the dangers of hydrogen gas produced as a part of that process. The pharmaceutical industry uses the highest possible water purity levels. He also explained that the electronics industry uses water purity levels just below that of the pharmaceutical industry. Ajongwen is an expert in water purification based on his education and experience with Merck. Based on that expertise, Ajongwen recommended several vendors of water purification systems to Tezock during their discussions in New Jersey and Tezock later selected the vendor for the Metaloid plant.

Voltaix alleged that Tezock disclosed the trade secrets to Ajongwen in 2007, almost a year before Ajongwen traveled to Texas. There are no allegations that Ajongwen provided financial assistance or encouragement to Tezock in Texas. Ajongwen's deposition testimony indicates that much of the technical advice, financial assistance, or encouragement he gave Tezock occurred in New Jersey. Ajongwen's single trip to Texas occurred several months after the trade secrets were allegedly disclosed to Ajongwen and after the water purification system had been purchased. Thus, as in *Moki Mac*, Ajongwen's activities in Texas will not be the main focus of the litigation regarding his alleged liability. *See Moki Mac*, 221 S.W.3d at 585. His single trip to Texas is not *substantially* connected to the operative facts about his alleged assistance in the misappropriation of Voltaix's trade secrets.

Voltaix argues Ajongwen is subject to personal jurisdiction not merely because he traveled to Texas, but because he did so knowing that he was involved in the misappropriation of Voltaix's trade secrets. But Ajongwen's knowledge of the trade secrets is not connected to Texas. According to Voltaix, Ajongwen acquired that knowledge from Tezock in New Jersey long before Ajongwen came to Texas.

We conclude Ajongwen's single contact with Texas is not substantially connected to the operative facts of the litigation. *See Moki Mac*, 221 S.W.3d at 576, 585. Therefore, Ajongwen's alleged liability does not arise from or relate to his contact with Texas and Texas courts may not exercise specific jurisdiction over him. *See id.* We overrule Voltaix's second issue.[3]

## CONCLUSION

We conclude Ajongwen negated all bases for personal jurisdiction alleged in the pleadings and that the record shows Ajongwen does not have minimum contacts with Texas sufficient to support the exercise of specific jurisdiction.

We affirm the trial court's order.

120606F.P05

/Jim Moseley/
JIM MOSELEY
JUSTICE

---

[3] Because Ajongwen lacks minimum contacts with Texas, it is not necessary to discuss the fair-play-and-substantial-justice prong of personal jurisdiction *See Kelly*, 301 S.W.3d at 661 n.10.



# Court of Appeals
# Fifth District of Texas at Dallas

**JUDGMENT**

VOLTAIX, LLC, Appellant

No. 05-12-00606-CV          V.

JOHN AJONGWEN, Appellee

On Appeal from the 422nd Judicial District Court, Kaufman County, Texas
Trial Court Cause No. 80351-422.
Opinion delivered by Justice Moseley.
Justices Fillmore and Myers participating.

In accordance with this Court's opinion of this date, the trial court's order granting defendant John Ajongwen's special appearance is **AFFIRMED**.

It is **ORDERED** that appellee JOHN AJONGWEN recover his costs of this appeal from appellant VOLTAIX, LLC.

Judgment entered this May 30, 2013.

/Jim Moseley/
JIM MOSELEY
JUSTICE