**AFFIRM; Opinion Filed February 4, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-00464-CV

**TIM PRITCHETT, Appellant**
**V.**
**GOLD'S GYM FRANCHISING, LLC, Appellee**

**On Appeal from the 162nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-12-06623**

## MEMORANDUM OPINION

Before Justices FitzGerald, Francis, and Myers
Opinion by Justice Myers

Tim Pritchett brings this interlocutory appeal of the trial court's order denying his special appearance in this suit for breach of a guaranty agreement brought by Gold's Gym Franchising, LLC. TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(7) (West Supp. 2013). Pritchett brings two issues on appeal contending the trial court erred by denying his special appearance (1) because Gold's Gym's affidavits did not describe acts by Pritchett that are linked to Texas; and (2) because the forum-selection clause relied on by Gold's Gym was in a document not signed by Pritchett. We affirm the trial court's order denying Pritchett's special appearance.

### BACKGROUND

In 2006, Gold's Gym and West Athletic Club, Inc. signed a franchise agreement making West Athletic Club, Inc. a franchisee of Gold's Gym in Ellijay, Georgia. In 2007, Pritchett's daughter, Mistil Langston, and her husband, Shawn Langston, applied to Gold's Gym to have the

franchise transferred to their corporation, Bodies in Balance, Inc. Gold's Gym told the Langstons that besides their own personal guarantees, they needed another guarantor with greater financial strength to personally guarantee the franchise agreement. Mistil Langston named Pritchett as the additional guarantor.

The Share Subscription Agreement for Bodies in Balance, which was signed by Pritchett[1] and the Langstons, showed the Langstons each owned twenty-five percent of the company and Pritchett owned fifty percent. On October 13, 2007, the Langstons, Pritchett, and representatives of Gold's Gym and West Athletic Club signed the "Consent to Transfer," which transferred the franchise to Bodies in Balance. Bodies in Balance agreed to assume all of West Athletic Club's obligations, covenants, and undertakings under the 2006 franchise agreement. Pritchett and the Langstons signed the Consent to Transfer as guarantors. An exhibit to the Consent to Transfer was the "Full Continuing Guaranty," signed by Pritchett and the Langstons, with the guarantors promising "to be bound personally by . . . each and every provision of the Franchise Agreement."

Effective January 1, 2008, Gold's Gym and Bodies in Balance entered into a new franchise agreement and terminated the 2006 franchise agreement. Pritchett and the Langstons initialed an exhibit to the January 1, 2008 agreement indicating their acknowledgment that the January 1, 2008 franchise agreement replaced the 2006 franchise agreement. Pritchett and the Langstons signed a new "Full Continuing Guaranty" effective January 1, 2008 agreeing "to be personally bound by . . . each and every provision in the [2008 Franchise] Agreement." The 2008 franchise agreement contained a "Consent to Jurisdiction" provision in which Bodies in Balance and its owners agreed that the state and federal courts in Dallas County had exclusive jurisdiction over all disputes between Gold's Gym and Bodies in Balance and its owners. The

---

[1] Throughout this opinion, we refer to documents as being signed by Pritchett. Whether Pritchett signed the documents was a disputed issue in this proceeding. When we state that Pritchett signed something, we mean only that a signature appears in the place designated for his signature.

consent-to-jurisdiction provision stated that Bodies in Balance and its owners "irrevocably submit to the jurisdiction of such courts and waive any objection you, he, or she may have to either jurisdiction or venue."

On November 17, 2011, Gold's Gym notified Bodies in Balance, Pritchett, and the Langstons that the franchise was terminated for failure to pay amounts owed under the franchise agreement. Gold's Gym demanded that they pay $165,559.37 within one week or Gold's Gym would bring legal action. When the money was not paid, Gold's Gym filed suit against Bodies in Balance, Pritchett, and the Langstons.

Pritchett filed a special appearance, asserting he was not a Texas resident, he had no contacts with Texas, that he did not sign any of the corporate or franchise documents on which his signature appears, and "that Mistil Langston forged my signature on one or more of the alleged agreements." Pritchett also denied having any interest in Bodies in Balance. Mistil Langston also signed an affidavit stating Pritchett did not sign any of the documents. The trial court denied Pritchett's special appearance.[2]

## SPECIAL APPEARANCE

In his two issues, Pritchett contends the trial court erred by denying his special appearance (1) because Gold's Gym's affidavits did not describe acts by Pritchett that are linked to Texas; and (2) because the forum-selection clause relied on by Gold's Gym was in a document not signed by Pritchett.

---

[2] After the trial court denied Pritchett's special appearance on March 11, 2013, Pritchett filed a motion to reconsider the denial of his special appearance. Attached to the motion was Mistil Langston's March 20, 2013 affidavit in which she stated she signed Pritchett's name on the various documents without Pritchett's authorization. Gold's Gym filed a response to the motion to reconsider, attaching the depositions of Pritchett and Mistil Langston. On appeal, Pritchett does not assert that the trial court erred by denying his motion to reconsider the special appearance, and he does not cite to any of the evidence in support of the motion to reconsider and the response to that motion. Because appellant appeals from only the denial of the special appearance and does not assert the trial court erred by denying his motion to reconsider, we do not consider any of the evidence in support of the motion to reconsider and the response that was not before the trial court when it denied Pritchett's special appearance.

**Standard of Review**

Whether a trial court has personal jurisdiction over a nonresident defendant is a question of law. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 790–91 (Tex. 2005); *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). Because the trial court's exercise of personal jurisdiction over a nonresident defendant is one of law, an appellate court reviews the trial court's determination of a special appearance de novo. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007); *BMC Software*, 83 S.W.3d at 794. However, the trial court must frequently resolve fact questions before deciding the jurisdictional question. *BMC Software*, 83 S.W.3d at 794; *Capital Tech. Info. Servs., Inc. v. Arias & Arias, Consultores*, 270 S.W.3d 741, 748 (Tex. App.—Dallas 2008, pet. denied) (en banc). In a special appearance, the trial court is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Leesboro Corp. v. Hendrickson*, 322 S.W.3d 922, 926 (Tex. App.—Austin 2010, no pet.). We do not "disturb a trial court's resolution of conflicting evidence that turns on the credibility or weight of the evidence." *Ennis v. Loiseau*, 164 S.W.3d 698, 706 (Tex. App.—Austin 2005, no pet.). When a trial court does not issue findings of fact or conclusions of law, "all facts necessary to support the judgment and supported by the evidence are implied." *BMC Software*, 83 S.W.3d at 795. We will affirm the trial court's ruling on any legal theory that finds support in the record. *See id.*; *Dukatt v. Dukatt*, 355 S.W.3d 231, 237 (Tex. App.—Dallas 2011, pet. denied).

The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the provisions of the Texas long-arm statute. *Moki Mac,* 221 S.W.3d at 574; *BMC Software,* 83 S.W.3d at 793. The nonresident defendant then has the burden of negating all bases of jurisdiction alleged in the plaintiff's petition. *Moki Mac,* 221 S.W.3d at 574; *BMC Software,* 83 S.W.3d at 793.

## Personal Jurisdiction

The Texas long-arm statute permits Texas courts to exercise jurisdiction over nonresident defendants that do business in Texas. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 17.041–.045 (Vernon 2008); *PHC–Minden, L.P. v. Kimberly–Clark Corp.*, 235 S.W.3d 163, 166 (Tex. 2007); *BMC Software*, 83 S.W.3d at 795. Under the statute, a nonresident does business in Texas if he: (1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state; (2) commits a tort in whole or in part in this state; or (3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state. TEX. CIV. PRAC. & REM. CODE ANN. § 17.042. The broad language of section 17.042 extends Texas courts' personal jurisdiction "as far as the federal constitutional requirements of due process will permit." *PHC–Minden*, 235 S.W.3d at 166 (quoting *U–Anchor Adver., Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex. 1977)).

The Due Process Clause of the Fourteenth Amendment operates to limit the power of a state to assert personal jurisdiction over a nonresident defendant. *Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., Solano Cnty.*, 480 U.S. 102, 108 (1987); *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 413–14 (1984). The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985); *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 294 (1980); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945). Under the Due Process Clause, personal jurisdiction over a nonresident defendant is constitutional when the nonresident defendant has established minimum contacts with the forum state and the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Burger King*, 471 U.S. at

476; *Int'l Shoe*, 326 U.S. at 320. However, personal jurisdiction is a waivable right, and a party may agree to a forum's jurisdiction. *Burger King*, 471 U.S. at 472 n.14.

In this case, Gold's Gym alleged the defendants had done business in Texas; had continuing contacts with Texas; that the contract was entered into, performed, and breached in Dallas County; and that the parties had agreed venue of the case would be in Dallas County.

## FORUM-SELECTION CLAUSE

A party may waive his right to contest personal jurisdiction and consent to a court's personal jurisdiction. A mandatory forum-selection clause in a contract is one way a party may consent to jurisdiction. *Burger King*, 471 U.S. at 472 n.14. Forum-selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). The party opposing enforcement of a forum-selection clause carries a "heavy burden" of showing the clause should not be enforced. *Id.* at 17, 19.

In his second issue, Pritchett argues the trial court erred by denying his special appearance because the forum-selection clause was in a document Pritchett did not sign. Pritchett's assertion has two parts: first, that the forum-selection clause was in the franchise agreement, which was signed only by Mistil Langston on behalf of Bodies in Balance as its president; and second, even if the forum-selection clause was incorporated into another document on which his signature appears, Pritchett denied signing the document.

### Incorporation by Reference

The forum-selection clause appears only in the 2008 franchise agreement, which Pritchett did not sign. Gold's Gym argues that the franchise agreement was incorporated by reference into the guaranty signed by Pritchett.

The franchise agreement was between Gold's Gym and Bodies in Balance, and the agreement made reference to Bodies in Balance's "Owners." The franchise agreement defined "Owner" to mean "any person holding a direct or indirect, legal or beneficial Ownership Interest or voting rights in you [Bodies in Balance] or in any entity that directly or indirectly holds an Ownership Interest or voting rights in you." "Ownership Interest" in a corporation was defined as "shares of capital stock or other equity interests in a corporation." The agreement defined "Guarantors" as meaning "each Owner having an "Ownership interest in you . . . of twenty percent (20%) or more . . . and any other Owner designated by us as a Guarantor in Exhibit A of this Agreement."

Section 0.8 of the franchise agreement contained the forum-selection clause:

8. <u>Consent to Jurisdiction.</u> Subject to our and your arbitration obligations in Subsection O.6, you [Bodies in Balance] and *your Owners agree that all judicial actions brought by us against you or your Owners . . . must be brought exclusively in the state courts in Dallas County, Texas or the United States District Court for the Northern District of Texas, Dallas Division. The courts specified in this Subsection O.8 shall have exclusive jurisdiction over all disputes,* and venue shall lie in Dallas County/Dallas Division, and shall be determined according to Texas law, without regard to the jurisdictional, venue, or choice of law provisions of any state or territory other than Texas. *You (and each Owner) irrevocably submit to the jurisdiction of such courts and waive any objection you, he, or she may have to either jurisdiction or venue.*

(Emphasis added.)

Exhibit A of the franchise agreement listed the "Owners" as Mistil Langston with twenty-five percent of the shares, Shawn Langston with twenty-five percent of the shares, and Pritchett with fifty percent of the shares. Exhibit A also listed the guarantors as Pritchett and the Langstons. Pritchett, the Langstons, and a senior vice-president for Gold's Gym initialed Exhibit A.

The guaranty agreement was Exhibit B to the franchise agreement. The guaranty agreement stated:

*Guarantors do hereby agree to be personally bound by*, and personally liable for the breach of, *each and every provision in the [2008 Franchise] Agreement*, both monetary obligations and obligations to take or refrain from taking specific actions or to engage or refrain from engaging in specific activities, including the non-competition, confidentiality, transfer, and arbitration requirements.

(Emphasis added.) Pritchett and the Langstons signed the guaranty.

When construing a contract, our primary goal is to determine the parties' intent as expressed in the terms of the contract. *Chrysler Ins. Co. v. Greenspoint Dodge of Hous., Inc.*, 297 S.W.3d 248, 252 (Tex.2009); *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). Unsigned documents may be incorporated into the parties' contract by referring in the signed document to the unsigned document. *Owen v. Hendricks*, 433 S.W.2d 164, 167 (Tex. 1968). The language used to refer to the incorporated document is not important as long as the signed document "plainly refers" to the incorporated document. *Id.*; *In re C & H News Co.*, 133 S.W.3d 642, 645 (Tex. App.—Corpus Christi 2003, orig. proceeding). Documents incorporated into a contract by reference become part of that contract. *In re 24R, Inc.*, 324 S.W.3d 564, 567 (Tex. 2010) (orig. proceeding) (per curiam). When a document is incorporated into another by reference, both instruments must be read and construed together. *In re C & H News Co.*, 133 S.W.3d at 645–46.

Plainly referring to a document requires more than merely mentioning the document. *See Trico Marine Servs., Inc. v. Stewart & Stevenson Technical Servs., Inc.*, 73 S.W.3d 545, 549–50 (Tex. App.—Houston [1st Dist.] 2002, mandamus denied). The language in the signed document must show the parties intended for the other document to become part of the agreement. *See One Beacon Ins. Co. v. Crowley Marine Servs., Inc.*, 648 F.3d 258, 267 (5th Cir. 2011) (citing 11 SAMUEL WILLISTON & RICHARD A. LORD, A TREATISE ON THE LAW OF CONTRACTS § 30:25, at 234 (4th ed. 1999) ("in order to uphold the validity of terms incorporated by reference, it must be clear that the parties to the agreement had knowledge of and assented to the incorporated terms")); 17A C.J.S. *Contracts* § 402 (2011) ("For an incorporation by

reference to be effective, it must be clear that the parties to the agreement had knowledge of and assented to the incorporated terms.").

In this case, the guaranty agreement provided, "Guarantors do hereby agree to be personally bound by . . . each and every provision in the [2008 Franchise] Agreement." This incorporating language in the guaranty clearly shows the parties intended for the franchise agreement and its forum-selection clause to become part of the guaranty agreement. *See In re Bank One, N.A.*, 216 S.W.3d 825, 826 (Tex. 2007) (orig. proceeding) (per curiam) (arbitration agreement in Bank's Account Rules and Regulations was incorporated by reference into signature card stating customer agreed to be bound by the terms and agreements in the account rules and regulations). We conclude the forum-selection clause was incorporated by reference into the guaranty. Pritchett's argument that the forum-selection clause does not apply to him because he did not sign the franchise agreement lacks merit.

The forum-selection clause required all suits between Gold's Gym and the "Owners" of Bodies in Balance be brought in Dallas County and that the "Owners" waived any objection to the jurisdiction of the courts in Dallas County. Exhibit A to the franchise agreement and the share subscription agreement showed Pritchett was a fifty-percent shareholder of Bodies in Balance and therefore was an "Owner" as defined in the franchise agreement. Thus, if Pritchett signed the guaranty, then he was subject to the forum-selection clause and waived any jurisdictional objection to being sued in Dallas County.

**Whether Pritchett Signed the Guaranty**

Pritchett also asserts he did not sign the guaranty. Pritchett states in his affidavit that he did not sign the guaranty, and Mistil Langston also states Pritchett did not sign the guaranty. However, the guaranty appears to contain his signature. Whether Pritchett signed the guaranty or whether his signature was forged was a fact question for the court. This determination depended

on the trial court's evaluation of the credibility of Pritchett and Langston and the court's evaluation of the weight of the evidence.

The trial court was not requested to file and did not file findings of fact and conclusions of law.  Therefore, we must imply all facts necessary to support the order on appeal that are supported by the evidence and affirm on any legal theory finding support in the record.  *BMC Software*, 83 S.W.3d at 795; *Dukatt*, 355 S.W.3d at 237.  One legal theory that could support the order denying the special appearance is that Pritchett waived personal jurisdiction by signing the guaranty which incorporated by reference the forum-selection clause.  This theory required the trial court to determine that Pritchett was an "Owner" of Bodies in Balance as defined in the franchise agreement, that Pritchett signed the guaranty, and that Pritchett and Mistil Langston's denials that he signed the various documents were not credible.  The trial court's determination involved the resolution of conflicting evidence:  the documents show they are signed by Pritchett, but Pritchett and Mistil Langston denied that Pritchett signed them.  We do not "disturb a trial court's resolution of conflicting evidence that turns on the credibility or weight of the evidence."  *Ennis*, 164 S.W.3d at 706.

Because the trial court's implied finding that Pritchett signed the guaranty supports the conclusion that the forum-selection clause in the franchise agreement was incorporated by reference into the guaranty, we conclude the trial court did not err by denying Pritchett's special appearance.

We overrule appellant's second issue.  Because the resolution of appellant's second issue disposes of the appeal, we do not address appellant's first issue asserting Gold's Gym's affidavits do not describe acts linking Pritchett to Texas.  *See* TEX. R. APP. P. 47.1.

**CONCLUSION**

We affirm the trial court's order denying Pritchett's special appearance.


130464F.P05

/Lana Myers/
LANA MYERS
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

TIM PRITCHETT, Appellant

No. 05-13-00464-CV          V.

GOLD'S GYM FRANCHISING, LLC,
Appellee

On Appeal from the 162nd District Court,
Dallas County, Texas
Trial Court Cause No. DC-12-06623-I.
Opinion delivered by Justice Myers.
Justices FitzGerald and Francis participating.


In accordance with this Court's opinion of this date, the order of the trial court denying appellant's special appearance is **AFFIRMED**.

It is **ORDERED** that appellee GOLD'S GYM FRANCHISING, LLC recover its costs of this appeal from appellant TIM PRITCHETT.


Judgment entered this 4th day of February, 2014.


/Lana Myers/
LANA MYERS
JUSTICE